FILED
2021 Apr-09  PM 03:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| **GARY THACKER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | Civil Action Number |
| **TENNESSEE VALLEY** | ) | **5:15-CV-01232-AKK** |
| **AUTHORITY** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Gary and Venida Thacker bring this action against the Tennessee Valley Authority for negligently and wantonly failing to guard or warn against a downed power line in the Tennessee River. Doc. 1 at 8-9.[1] Before the court are motions for summary judgment (1) by the TVA on all claims, doc. 97, and (2) by the Thackers

---

[1] The TVA moved for summary judgment on the negligence and wantonness claims related to the power line installation and the downed line. Doc. 98 at 17, 25, 31. But, in their response, the Thackers ignored the power line installation claims and focused solely on their downed line claims. *See* docs. 93 & 107. "[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resol. Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). And "[i]n opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him." *Resol. Trust Corp.*, 43 F.3d at 592 (internal quotations omitted). Therefore, the Thackers have abandoned their claims that the TVA failed "to exercise reasonable care in the assembly and installation of the power lines[,]" doc. 1 at 8, and, as to these claims, the TVA's motion is due to be granted.

on their negligence claim, doc. 92.[2] After careful consideration of the record, the law, and the briefs, the TVA's motion is due to be granted solely as to the Thackers' claims that the TVA wantonly and negligently breached its duty when installing the power line, *see supra* n. 1, and the Thackers' motion is due to be denied.

## I.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that

---

[2] Initially, this court dismissed this case holding the TVA was immune from suit under an implied discretionary function exception to the TVA's sue and be sued clause. *Thacker v. Tenn. Valley Auth.*, 188 F. Supp. 3d 1243, 1245 (N.D. Ala. 2016). The Court of Appeals affirmed, *see Thacker v. Tenn. Valley Auth.*, 868 F.3d 979, 981-983 (11th Cir. 2017), and the Supreme Court reversed finding, in part, that the TVA is only protected by sovereign immunity when it is being sued for its governmental activity, *see Thacker v. Tenn. Valley Auth.*, 139 S. Ct. 1435, 1441, 1443 (2019). Because the conduct that caused the accident here—replacing an electrical line—is the type of activity that "any power company might do[,]" *id*. at 1443, it is not a governmental activity, and the TVA cannot invoke sovereign immunity.

there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment motions, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II.

The accident at issue here occurred during the TVA's upgrade of an electricity line spanning across the Tennessee River at the TVA-owned Wheeler Reservoir. Docs. 98-4 at 3-4; 98-3 at 3. Six towers (45 through 50) carried the line across the river. Doc. 98-4 at 4. Except for towers 45 on the north bank and 50 on the south bank, the other four towers were situated in the water. *Id.* When the new line, which the TVA pulled from tower 50, neared tower 46, the pulling cable broke and the line sagged in between towers 49, 48, and 47. *Id.* at 5.[3] Witnesses disagree on how far the line sagged and where it actually touched the water, *see* docs. 98-6 at 16-17; 98-4 at 5; 93-4 at 9; 93-5 at 21, but they agree that the downed line had no markings, *see* docs. 93-9 at 2; 93-2 at 9; 93-4 at 9; 98-11 at 5.

To help with the installation of the new line and to warn boaters about potential falling debris, the TVA had two boats in the river patrolling nearby. These two boats lacked sirens or public address systems, docs. 98-6 at 24, 27-28; 98-7 at 2, and only

---

[3] The Thackers object to Stacy Sockwell's testimony, doc. 98-4, regarding the location of the downed line, doc. 105 at 2. They claim that this testimony is not relevant as it only related to how the downed line sagged immediately following the cable breaking. Doc. 105 at 2. The court overrules this objection as the testimony is relevant to understanding the broader events that occurred leading up to the collision. The Thackers also argue that Sockwell's testimony is unreliable based on her location and view on that day. *Id.* at 2-3. The court also overrules this objection. Credibility determinations are reserved for the jury. *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

Similarly, the TVA objects to several facts the Thackers have asserted as immaterial, misrepresentative, argumentative, speculative, or inappropriate opinion testimony. Doc. 109-1. The court overrules these objections and notes that it has thoroughly reviewed the record and only relies on portions of the record it finds material.

had a couple of orange flags to waive as warning, doc. 98-6 at 53, white and yellow strobe lights, doc. 98-6 at 29, and line cutters to cut the electrical line if needed, docs. 93-4 at 20; 93-7 at 2. Moreover, the patrol boats could not travel as fast as the bass fishing boats that frequented the river, *see* 98-6 at 28, and at least one TVA employee knew bass boats traveled at high speeds down the river, *see* doc. 93-2 at 5.

After the cable broke, the TVA undertook several steps to protect boaters from potential danger. In particular, the two patrol boats shifted their tasks primarily to intercepting approaching vessels. Docs. 98-6 at 24; 35-36; 93-6 at 25; 93-6 at 25; 93-5 at 13. Externally, at the TVA's request, the Coast Guard established a marine safety zone by broadcasting a notice on the marine radio hourly, notifying boaters of the closing of the hazardous portion of the river and that "there were parted cables and low hanging cables" in the river. Doc. 98-7 at 2. Also, the TVA asked the Army Corps of Engineers to shut down a nearby lock to prevent new traffic from the west and asked a nearby bridge to drop its span to restrict large commercial vessels traveling from the east from entering the area. Doc. 98-6 at 26.

Around 5:30 p.m., about three hours after the cable broke, a recreational bass fishing tournament began, and boats "blasted off" from an upstream harbor, including one operated by Gary Thacker. Doc. 98-9 at 44-45. Thacker, whose boat did not have a marine radio, had not heard the warning about the closure of the reservoir. *See id.* at 38; 93-9 at 2. Thacker drove his boat with his fishing partner

towards their planned fishing spot at full speed around 68 miles per hour. Doc .98-9 at 40. Thacker hit the downed line between towers 48 and 49, nearly decapitating his fishing partner and injuring himself. Docs. 98-9 at 47; 93-9 at 2; 93-10 at 2. This lawsuit followed.

## III.

The court now turns to the parties' respective contentions, beginning in section A with the Thackers' assertion that admiralty law governs this dispute. Next, in section B, the court will evaluate the arguments related to the negligence claim. Finally, section C addresses the wantonness claim.

## A.

The choice of jurisdiction belongs to the plaintiff where, as here, a claim falls within the court's admiralty jurisdiction and another form of subject-matter jurisdiction. Fed. R. Civ. P. 9(h); *St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1184 (11th Cir. 2009). In their Complaint, the Thackers did not explicitly assert whether they were invoking the court's admiralty jurisdiction for their case.[4] However, they demanded a jury trial, doc. 1 at 2, 9, and because that is

---

[4] The Thackers asserted this court has "original jurisdiction over this action pursuant to Congressional waiver of suit against TVA under 16 U.S.C. § 831c(b)." Doc. 1 at 2. § 831c(b) does not address subject-matter jurisdiction and establishes only that the TVA "[m]ay sue and be sued in its corporate name." 16 U.S.C. § 831c(b). The court has jurisdiction over this claim under 28 U.S.C. § 1331 as a claim "arising under" a law of the United States. The "TVA . . . is a federally created corporation and [] precedents going back over a hundred and fifty years establish that any claim, even one created by state law, against a federally created corporation arises under federal

an option that is not available in admiralty, *see Beiswenger Enters. Corp. v. Carletta*, 86 F.3d 1032, 1037 (11th Cir. 1996), the Thackers have necessarily chosen to bring a suit at law. To the extent the Thackers now wish to amend their complaint through their motion for summary judgment to invoke admiralty jurisdiction, they cannot do so. *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013).

## B.

The parties have filed cross motions on the negligence claim, which turns in part on whether Alabama's recreational use statutes apply.[5] These statutes protect landowners who open their land to non-commercial motivated recreational use. *Owens v. Grant*, 569 So. 2d 707, 708-710 (Ala. 1990); *Poole v. City of Gadsden*, 541 So. 2d 510, 512-514 (Ala. 1989); Ala. Code 1975 §§ 35-15-3 & 35-15-22. The parties disagree on whether these statutes bar the Thackers' claims. *See* docs. 98 at 25; 107 at 5; 93 at 17.

## 1.

Turning first to the TVA's motion, the TVA presented evidence that it owns Wheeler Reservoir, docs. 98-3 at 3; 99 at ¶ 3, 99-1 at 13-14, and has opened it for

---

law." *Monsanto Co. v. Tenn. Valley Auth.*, 448 F. Supp. 648, 651 (N.D. Ala. 1978) (collecting cases).

[5] Ala. Code §§ 35-15-1, *et. seq* and §§ 35-15-20, *et. seq.*

public recreational use, docs. 99 at ¶ 5, 99-3 at 14-20. The record is not clear, however, whether the recreational use has a profit motive.[6] Doc. 98 at 23-24. The only evidence the TVA cites to show the public has free access is the Wheeler Reservoir Land Management Plan and two webpages. Docs. 99-3 at 14-20; 109 at 4, n.1. The Land Management Plan discusses that the reservoir is open to the public but is silent as to whether the access is profit motivated. Doc. 99-3 at 14-20; Ala. Code. §35-15-21(5). In fact, the Plan explicitly mentions several commercial ventures, but it is unclear whether the TVA owns those businesses. Doc. 99-3 at 14-20. Further, the two webpages do not show the recreational use of the reservoir is free or has no profit motive.[7] Therefore, on this record, the TVA has not established a non-commercial motive.

---

[6]Contrary to the Thackers' arguments, *see* doc. 107 at 14-16, the recreational use statutes also apply to hybrid-use properties. *See Owens v. Grant*, 569 So. 2d 707, 712 (Ala. 1990) (that a lake was connected to a commercial gravel pit operation did not make the recreational use of the lake profit motivated). The statutes protect landowners when people are recreationally using their land, "with permission or invitation, but for purposes unrelated to the owner's business . . . ." *Wright v. Ala. Power Co.*, 355 So. 2d 322, 324 (Ala. 1978). Therefore, the TVA's commercial endeavors on the property do not prevent the statutes from applying. Further, the Supreme Court's ruling that the TVA is susceptible to suit in situations such as these, *see Thacker v. Tenn. Valley Auth.*, 139 S. Ct. 1435, 1441, 1443 (2019), does not impact whether the recreational use statutes can offer the TVA any protection.

[7] The Recreation webpage contains no mention of price for admission, and the Information for Boaters webpage only discusses that the use of the navigation locks is free. *See Recreation*, TVA, available at https://www.tva.com/environment/recreation (last visited February 11, 2021); *Information for Boaters*, TVA, available at https://www.tva.com/environment/recreation/information-for-boaters (last visited February 11, 2020).

**a.**

But, even if access is free and has no profit motive, questions of fact exist regarding whether the exceptions to the recreational use statutes apply. Assuming the Thackers must show that both exceptions to Articles I and II apply,[8] questions of fact preclude summary judgment in this case.

**i.**

Article I has three exceptions, but only the first is potentially at issue here, *i.e.*, the landowner may be found liable "for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity . . . ." *Id.* at 35-15-3.[9] This exception applies when a landowner "does some positive act which creates a new hidden danger, pitfall or trap, which is a condition that a person could not avoid by

---

[8] The Alabama Supreme Court has not clearly established whether a plaintiff needs to show only one of the exceptions apply or both. In some instances, the Court has applied both exceptions without fully explaining if either is sufficient alone. *See Poole v. City of Gadsden*, 541 So. 2d 510, 512-13 (Ala. 1989); *McElrath v. Ala. Power Co.*, 554 So. 2d 994, 996 (Ala. 1989); *Owens v. Grant*, 569 So. 2d 707, 708-712 (Ala. 1990); *Ex parte City of Geneva*, 707 So. 2d 626, 628- 631 (Ala. 1997); *Ex parte City of Guntersville*, 238 So. 3d 1243, 1246-1249 (Ala. 2017); *Ex Parte Town of Dauphin Island*, 274 So. 3d 237 (Ala. 2018). And in other opinions, the Court has only applied the Article II exception. *See In Martin ex rel. Martin v. City of Gadsden*, 584 So. 2d 796, 797-798 (Ala. 1991); *Shirley v. Tuscaloosa Cnty Park & Recreation Auth,*, 163 So. 3d 352, 353-355 (App. Ala. 2014) (cert. denied).

[9] The full text reads: "This article does not limit the liability which otherwise exists for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity; or for injury suffered in any case where permission to hunt, fish, trap, camp, hike, cave, climb, rappel, or sight-see was granted for commercial enterprise for profit; or for injury caused by acts of persons to whom permission to hunt, fish, trap, camp, hike, or sight-see was granted to third persons as to whom the person granting permission, or the owner, lessee, or occupant of the premises owned a duty to keep the premises safe or to warn of danger." Ala. Code 1975 § 35-15-3.

the use of reasonable care and skill." *Russell ex. rel. Russell v. Tenn. Valley Auth.*, 564 F. Supp. 1043, 1047 (N.D. Ala. 1983) (quoting *Wright v. Ala. Power Co.*, 355 So. 2d 322, 325 (Ala. 1978)); *see also Clark v. Tenn. Valley Auth.*, 606 F. Supp. 130, 131 (N.D. Ala. 1985). This exception may apply where, as here, the TVA took positive action, *i.e.*, replacing the electricity line, that created a danger. Doc. 98-4 at 3-5. The Thackers have presented evidence that the downed line was unmarked and hidden. Docs. 93-9 at 2; 93-2 at 9; 93-4 at 9; 98-11 at 5. Consequently, the negligence claim hinges on whether the collision was avoidable "by the use of reasonable care and skill." *Russell*, 564 F. Supp. at 1047. Viewing the evidence in the light most favorable to the Thackers and accepting their contention that the downed line was not visible, a question of fact exists regarding whether Gary Thacker was unable to avoid the accident using "reasonable care and skill." Docs. 107-11 at 2, 107-10. Therefore, the exception to Article I precludes summary judgement for the TVA at this juncture.

### ii.

Article II provides an exception, among other things, when a landowner "has actual knowledge [of a dangerous condition;] . . . (3) That the condition, use, structure, or activity is not apparent to the person or persons using the outdoor recreational land; and (4) That having this knowledge, the owner chooses not to guard or warn, in disregard of the possible consequences." Ala. Code. 1975 § 35-15-

24(a).[10] A danger is hidden or "not apparent" when a "person could not avoid [it] by the use of reasonable care and skill." *Geneva*, 707 So. 2d at 630. While the TVA argues that it did not know the downed line "was [hidden] to persons using the Reservoir[,]" and that the danger from the downed line was visible, doc. 98 at 25, 26, the Thackers dispute the visibility of the downed line, docs. 107-11 at 2; 107-10. And, the TVA concedes it had two boats in the river to warn other vessels about the downed line. Docs. 98-4 at 17; 98-6 at 24, 52; 93-6 at 7; 93-5 at 13. Based on these facts, a jury could conclude that the TVA had knowledge the downed line posed a hidden and non-apparent danger to boaters.

The final element centers on whether the TVA chose "not to guard or warn." The TVA contends it met its obligation by using the two boats patrolling the area, coordinating the nearby lock closure and bridge lowering to decrease traffic, and notifying the Coast Guard. Doc. 98 at 27. But the Thackers counter with evidence that the downed line was unmarked and that the two boats were situated away from the affected area at the time of the collision. Docs. 93-9 at 2; 93-2 at 9; 93-4 at 9; 98-

---

[10] The TVA does not challenge the first two elements of the exception—*i.e.*, "(1) That the outdoor recreational land is being used for non-commercial recreational purposes; (2) That a condition, use structure, or activity exists which involves an unreasonable risk of death or serious bodily harm[.]" *See* doc. 98 at 25, n.23 & 26, n.24.

11 at 5; 93-6 at 11; 98-6 at 55. This factual dispute regarding whether the TVA failed to guard or warn to trigger the exception to Article II is for a trier of fact to resolve.[11]

For all these reasons, the TVA's motion on the negligence claim is due to be denied.

## 2.

The Thackers also are not due summary judgment on the negligence claim. To establish their claim, the Thackers "must prove: (1) a duty to a foreseeable plaintiff; (2) breach of that duty; (3) proximate causation; and (4) damage or injury." *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994). "Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury could not have occurred." *Id.* Contrary to the Thackers' contention that "[i]t is undisputed that TVA's negligent conduct caused [them] to suffer injuries and damages," doc. 93 at 21, a dispute exists regarding whether Mr. Thacker allegedly failed to keep a proper lookout, drove his

---

[11] The TVA argues that any warning or guarding is sufficient and that "ARUS does not require the Court to engage in a fact-specific reasonableness or effectiveness inquiry . . . ." Doc. 98 at 28. But the cases the TVA cited in support of this argument are not on point. In *Clark*, the court never reached the fourth element of the exception to Article II, noting that it was not necessary to rule on the effectiveness of the warning in deciding the case. 606 F. Supp. at 131-132. If anything can be construed from the court's dicta on the fourth element, it is that the court believed an effectiveness inquiry would be necessary and the defendant must prove the warnings were in place "at the time of the accident . . . ." *Id.* at 132. In *Grice*, the plaintiff was unable to prove the second element of Article II's exception that the defendant had actual knowledge of the danger, and the court never reached the fourth element of the exception. *Grice v. City of Dothan*, 670 F. Supp. 318, 321 (M.D. Ala. 1987).

boat at an excessive speed, and did not check for reservoir closures. Docs. 104 at 6; 98-10 at 3, 98-11 at 3; 98-9 at 40; 98-9 at 39, 45. Whether the TVA's purported insufficient efforts to guard the area or Mr. Thacker's own negligence caused the collision is a matter for the jury to resolve. Therefore, the Thackers' motion on the negligence claim is also due to be denied.

## C.

Finally, the TVA challenges the wantonness claim. Doc. 98 at 31. Wantonness is "conduct which is carried out with a reckless or conscious disregard of the rights or safety of others." Ala. Code 1975 § 6-11-20(b)(3). It "is not merely a higher degree of culpability than negligence[, but a] qualitatively different tort. . . ." *Tolbert v. Tolbert*, 903 So.2d 103, 114 (Ala. 2004) (quoting *Ex Parte Anderson*, 682 So. 2d 467, 469-470 (Ala. 1996)). "[T]o establish wantonness, the plaintiff must 'prove that the defendant caused harm by the conscious doing of some act or the conscious omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury would likely or probably result." *Kmart Corp. v. Peak*, 757 So. 2d 1138, 1144 (Ala. 1999) (quoting *Alfa Mutual Ins. Co. v. Roush*, 723 So. 2d 1250, 1258 (Ala. 1998)). "What constitutes wanton misconduct depends on the facts presented in each particular case[,]" *Ex Parte Anderson*, 682 So. 2d at 469-470, and "is a question of fact for the jury, unless

there is a total lack of evidence from which the jury could reasonably infer wantonness[,]" *Cash v. Caldwell*, 603 So. 2d 1001, 1003 (Ala. 1992).

The TVA asserts its attempts to guard or warn of the downed line show that it "did not act with reckless or conscious disregard to the rights and safety of others," and that there is no evidence it knew injury would likely or probably result based on its actions or inactions. Doc. 98 at 31.[12] The thrust of the TVA's argument is that it believed it had adequately guarded the downed line to prevent injury to boaters. Doc. 109 at 9. Indeed, the TVA undertook multiple efforts in that respect. But even considering these efforts, the court cannot find on this record that "there is a total lack of evidence from which the jury could reasonably infer wantonness." *Cash*, 603 So. 2d at 1003.

A review of the record shows a reasonable jury could find that despite knowing the line could potentially fall into the water and cause a collision, *see* docs. 93-2 at 17; 93-4 at 16; 93-7 at 2-3, the TVA employed inadequate safety measures. First, the Thackers have offered evidence that the TVA took more protective efforts in other jobs over land when necessary, like arranging the presence of law enforcement

---

[12] The TVA has conceded that it knew the downed line posed a danger to boaters. Doc. 98 at 25, n. 23 & 26 at n.24. But, the TVA argues that the Thackers cannot prove causation as Mr. Thacker was the proximate cause of the collision. Doc. 98 at 32. The Thackers have presented evidence that the downed line was hidden, docs. 93-2 at 9; 107-11 at 2; 107-10, and unguarded, docs. 98-6 at 54, 56; 93-6 at 11. A jury could find that even if Mr. Thacker had drove at a slower speed and was fully attentive, the accident would still have occurred. Therefore, the Thackers have also shown a dispute of fact on the proximate cause issue.

during pulls for assistance, which suggests the TVA knows the importance of such measures in preventing injury. Doc. 93-4. The TVA failed to arrange for the presence of local law enforcement in this instance, and the closest Coast Guard vessel was three hours away. Doc. 98-6 at 42, 44.

Second, the record shows that the TVA only used two boats to patrol the entire span of the mile-wide river. *See* docs. 93-5 at 12; 107-8 at 2. A reasonable jury could find the TVA did not dedicate enough resources to protect the public. Moreover, the patrol boats had a dual role of trying to protect the public and assisting the line workers with the pull, doc. 98-6 at 31; 93-4 at 10; 93-5 at 9; 93-6 at 5-7, and the closest other TVA boats that could provide additional aid were an hour and a half away, doc. 98-6 at 42.

Third, the Thackers have also offered evidence the TVA knew that many of the efforts it used to warn and prevent boats from approaching the area would not protect smaller recreational vessels. Apparently, the TVA knew about fishing tournaments held on the river and that the participating bass boats often traveled at high speeds down the main river channel and at speeds far exceeding the capacity of the TVA's two patrol boats.[13] Docs. 93-2 at 5; 98-6 at 28. And, the TVA knew its request to

---

[13] The speed differential apparently may have factored into the underlying accident. Shortly before the fishing competition began, Cox, who was on a boat guarding the area with the downed line, directed his boat to move to the north shore to assist with removing the line. Doc. 93-6 at 7, 11. Cox requested for the second boat to take over at the location he vacated out of concern for the safety of potential boaters going through that portion of the river. *Id.* at 8, 16. The second boat went instead to warn an approaching boat near the north shore. Doc. 98-6 at 55-56. While the

lower the span of the nearby bridge would not restrict small vessels entering the river from the east. Doc. 93-3 at 26. Likewise, at least one TVA official knew many recreational boats lack marine radios and would not hear the Coast Guard warning about the downed line. *See* doc. 93-6 at 6, 15.

To close, given the width of the river, the limited number of patrol boats, the patrol boats' limited top speed, and the evidence bass boats frequented this portion of the river, a reasonable jury could find that the TVA knew it did not have sufficient boats in the river to guard the affected area and that the failure to guard the downed line would likely result in injury. Therefore, when the evidence is construed in favor of the Thackers, the court cannot find that the record does not contain "evidence from which the jury could reasonably infer wantonness." *Cash*, 603 So. 2d at 1003. Accordingly, the TVA's motion on this claim is also due to be denied.

## IV.

Consistent with this opinion, the TVA's motion for summary judgment, doc. 97, is **GRANTED** solely as to the claims for negligence and wantonness in installing the power line. In all other respects, the TVA's motion is **DENIED**. The Thackers'

---

second boat was certainly prudent in warning the other boat, this meant both patrol boats were on the same side of the river at the time of the underlying collision. Docs. 93-6 at 11; 98-6 at 55-56. By the time the captain of the second boat realized Mr. Thacker was approaching the downed line, the captain was about three-quarters of a mile away and his boat was not fast enough to intercept Mr. Thacker. *Id.* at 56-57.

partial motion for summary judgment, doc. 92, is also **DENIED**. The court will issue

a separate order setting this matter for trial.

      **DONE** the 9th day of April, 2021.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE